**BL**

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Powell, | No. CV-04-625-PHX-DGC (HCE) |
| Plaintiff, | **ORDER** |
| vs. | |
| Bernie Ellis, in his individual capacity; and Warden Joe W. Booker, Jr., in his official capacity, | |
| Defendants. | |

Pending before the Court are the parties' motions for summary judgment (Docs. ##27, 31) and Plaintiff's motions to strike and motion for leave to file a sur-reply (Docs. ##35, 40). The Court will deny Plaintiff's motions to strike and grant Plaintiff's motion to file a sur-reply. Further, the Court will grant in part and deny in part the motions for summary judgment. Plaintiff's First Amendment rights were violated by the enforcement of Defendants' labeling policy. Defendant Bernie Ellis, however, is entitled to qualified immunity as to any damages incurred prior to November 18, 2003.

**I.     Background.**

Plaintiff Jeffrey Powell is a prisoner housed in the federal prison in Phoenix, Arizona (FCI-Phoenix). Plaintiff has filed a *pro se* Bivens action against Defendants (Doc. #1). See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff filed an amended complaint alleging that Warden Bernie Ellis violated Plaintiff's

First Amendment rights by enforcing a policy requiring books mailed to an inmate from a bookstore or publisher to be marked with the phrase "Authorized by Bureau Policy" (Doc. #12). As a result of this policy, a package of books sent to Plaintiff by Barnes & Noble Booksellers (Barnes & Noble) was returned on two separate occasions (Id.). Plaintiff also challenged the failure to notify him that his books were returned (Id.). Plaintiff requested compensatory and punitive damages, a declaratory judgment, and injunctive relief "ordering the prison to cease refusing packages of books which are labeled in a manner which conspicuously identifies a bookstore or publisher as the sender, even if the package is not marked with the words 'authorized by bureau policy'" (Id.).

Defendant Ellis filed a motion to dismiss that the Court granted in part, dismissing Plaintiff's claims for monetary relief against Defendant Ellis in his official capacity, and any successor to Ellis (Doc. #23). Because Ellis retired in May 2004, Warden Joe W. Booker was substituted for Ellis to the extent that Ellis was sued in his official capacity (Docs. ##24, 26). Defendant Ellis remains in the action in his individual capacity (Doc. #26).

Plaintiff has filed a motion for summary judgment, attaching various documents and affidavits (Docs. ##27-28). Defendants have responded and have filed a motion for summary judgment, attaching various documents and affidavits (Docs. ##31-32).

**II.     Plaintiff's Motions to Strike and Motion for Leave to File a Sur-Reply.**

Plaintiff has moved to strike Defendants' response, motion for summary judgment, and reply due to noncompliance with Local Rule of Civil Procedure 56.1 because Defendants did not set forth a separate statement of undisputed facts (Docs. ##35, 40). Defendants replied that because they expressly conceded that there were no issues regarding material facts, and their statement of facts was only two paragraphs long, the motion to strike should be denied (Doc. ##36-37). Under local rules, a party filing or opposing a motion for summary judgment "shall set forth separately from the memorandum of law, and in full, the specific facts on which that party relies in support of the motion. The specific facts shall be set forth in serial fashion and not in narrative form." LRCiv. 56.1(a). In their response and motion for summary judgment, Defendants set forth a two paragraph "statement of facts" in

narrative form (Doc. #32). Defendants' statement of facts technically violates the local rules. Because Plaintiff has not been prejudiced by the violation, however, his motions to strike will be denied.

Plaintiff also seeks leave to file a sur-reply, attaching his proposed sur-reply to his motion (Doc. #40). Plaintiff's motion will be granted and his sur-reply will be considered.

**III.    The Motions for Summary Judgment.**

Plaintiff requested summary judgment on the issues of liability, declaratory relief, and injunctive relief, but he sought a jury trial as to damages (Doc. #27). Plaintiff argued that under federal law, and the policy of the United States Department of Justice, Bureau of Prisons (BOP), he is entitled to receive books sent by a bookstore or publisher (Id.). But on two occasions, a detention officer went to the post office and refused delivery of a package of books sent to Plaintiff from Barnes & Noble and then failed to inform Plaintiff of the delivery (Id.). Plaintiff complained to Defendant Ellis, who knew of and approved a policy providing for the rejection of packages of books that were not marked "Authorized by Bureau Policy" even if they were clearly from a bookstore or publisher (Id.). Plaintiff maintained that the BOP policy does not require the magic words "Authorized by Bureau Policy" and, if it does, the policy is unconstitutional (Id.). Plaintiff asserted that the rejection of the package and failure to notify him violated his First Amendment rights (Id.). Further, Plaintiff argued that because his constitutional right to receive books from a bookstore and to be notified of their rejection was clearly established, Defendants are not entitled to qualified immunity (Id.).

Defendants argued that they did not violate a clearly established constitutional right because the Constitution does not prevent prison officials from placing conditions on the receipt of publications from bookstores and publishers (Doc. #32). Defendants further argued that they were only following BOP policy, which helped ensure the secure and orderly operation of the institution by notifying staff members who pick up hundreds of pieces of mail daily from the Post Office that a particular package is approved for entry into the prison (Id.). Defendants contended that they did not have the discretion to ignore or

- 3 -

1  refuse to follow BOP policy (Id.). Defendants maintained that the notification requirement
2  is content-neutral, and Plaintiff could have remedied the situation by notifying Barnes &
3  Noble of the requirement (Id.). Defendants asserted that Plaintiff merely needed to inform
4  the bookstore of the labeling requirement at the time an order is placed, and he was advised
5  of this requirement during his prison admission and orientation session (Id.). Defendants
6  argued that this requirement served as an extra level of security because individuals on the
7  outside who try to unlawfully use the return address of a bookstore or publisher to send
8  contraband would be unlikely to know about this requirement (Id.).

**A.  Facts.**

BOP policy provides that all incoming inmate property packages must be authorized in advance, except for books from bookstores or publishers that are also "marked with words such as 'Authorized by Bureau Policy'" (Doc. #28, Ex. 1; Doc. #32, Ex. A). The labeling requirement was enacted with the intent "to alert mail room staff that enclosed materials contain matter which does not require prior approval. These markings assist mail room staff to identify and process the material and avoid erroneous return(s)" (Id.). If the package is not pre-approved or so marked, a detention officer will refuse the package at the Post Office (Doc. #32, Ex. A). If the package is pre-approved or marked to indicate that it is "Authorized by Bureau Policy," the package is inspected by the prison mail room prior to being given to the inmate (Id.).

Despite these policies, Michael Jenkins, Inmates Systems Manager in charge of supervising the processing and distribution of incoming and outgoing mail for FCI Phoenix, attested that packages of books will often be received without being labeled "Authorized by Bureau Policy" (Doc. #32, Ex. B ¶¶ 2, 4). In fact, "[p]ackages received with a bookstore's preprinted . . . return address, will ordinarily be accepted at the Post Office, brought into the institution and the books will be reviewed for compliance with the content requirements" of the BOP program statement (Id. ¶ 4). Somewhat inconsistently, Jenkins also attested that if a package is received from a bookstore or publisher and did not contain the proper markings, it would have been rejected (Id. ¶ 5).

- 4 -

1       On July 30, 2003, pursuant to an order made by a non-prisoner, Barnes & Noble sent
2  by certified mail a package of books to Plaintiff at FCI-Phoenix (Doc. #28, Ex. 1 ¶ 1).
3  Barnes & Noble enclosed two receipts listing the books purchased and the sender (Id. ¶ 2).
4  A detention officer from the prison went to the Post Office to pick up mail and rejected the
5  package (Id.).  Plaintiff was not notified of this rejection (Id.).
6       Plaintiff eventually discovered the rejection and complained to Ellis (Doc. #28, Ex.
7  1 ¶ 4).  Ellis knew of and approved the policy to reject packages from bookstores or
8  publishers which were not marked "Authorized by Bureau Policy"(Id.).  Moreover, Ellis
9  informed Plaintiff that he was not notified of the rejection because the package never entered
10 the prison (Id. ¶ 8).
11      Before this particular incident, Plaintiff had received more than 35 books (Doc. #28,
12 Ex. 1 ¶ 10).  Plaintiff stated that he was unaware of the policy.  Jenkins, however, attested
13 that Plaintiff was informed of the policy during a prison admission and orientation meeting
14 (Id.; Doc. #32, Ex. B ¶ 13).  As a result of the policy, the individual who shipped the returned
15 package has stopped ordering books for Plaintiff (Doc. #28, Ex. 1 ¶ 10).  Inmates Joseph
16 Libretti, Jr. and Lorenzo Martinez both attested that while incarcerated at facilities other than
17 FCI-Phoenix, they received numerous books and were never informed that the package had
18 to be labeled "Authorized by Bureau Policy" (Id. Ex. 2 ¶ 2; Ex. 3 ¶ 2).  Upon being
19 transferred to FCI-Phoenix, however, they were no longer able to receive their packages
20 unless labeled as such (Id. Ex. 2 ¶ 4).

21      **B.     Legal Standards and Analysis.**

22      A court must grant summary judgment if the pleadings and supporting documents,
23 viewed in the light most favorable to the non-moving party, "show that there is no genuine
24 issue as to any material fact and that the moving party is entitled to judgment as a matter of
25 law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In
26 determining whether an official is entitled to qualified immunity, a court must make the
27 following determination: "whether – resolving all disputes of fact and credibility in favor
28 of the party asserting the injury – the facts adduced at summary judgment show that the

1 officer's conduct violated a constitutional right," and, if the conduct did violate a
2 constitutional right, whether "the constitutional right was 'clearly established.'" Kennedy
3 v. City of Ridgefield, 439 F.3d 1055, 1060 (9th Cir. 2006) (citing Saucier v. Katz, 533 U.S.
4 194 (2001)).

### 1.  Constitutional Rights.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Thornburgh v. Abbott, 490 U.S. 401, 406 (1989) (quoting Turner v. Safley, 482 U.S. 78 (1987)). A prisoner retains his First Amendment rights to the extent that such rights "are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Ashker v. Cal. Dep't of Corrs., 350 F.3d 917, 922 (9th Cir. 2003) (citations omitted). "A prison regulation that impinges on inmates' constitutional rights therefore is valid only if it is 'reasonably related to legitimate penological interests.'" Id. (quoting Turner, 482 U.S. at 88). "'[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.'" Id. Courts give deference to prison authorities when determining the constitutionality of a regulation or prison policy. Id.

In Turner, the Supreme Court set forth a four-factor test to determine whether a policy or regulation serves a legitimate penological objective:

> (1) whether the regulation is rationally related to a legitimate and neutral government objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

Clement v. Cal. Dep't of Corrs., 364 F.3d 1148, 1151-52 (9th Cir. 2004) (quoting Turner, 428 U.S. at 89-90). "[I]f the prison fails to show that the regulation is rationally related to a legitimate penological objective, [the court does] not consider the other factors." Ashker, 350 F.3d at 922. In considering the first factor, the court "(1) determine[s] whether the regulation is legitimate and neutral, and (2) assess[es] whether there is a rational relationship between the governmental objective and the regulation." Id.

- 6 -

1    In <u>Ashker</u>, the Ninth Circuit assumed that the prison's policy of requiring an approved
2 book label with a vendor stamp was legitimate, but determined that such policy was not
3 rationally related to the objective of the prison's interest in security and order. <u>Id.</u>  The court
4 determined that the prison's "legitimate interest in preventing the introduction of contraband
5 [was] adequately satisfied by the requirement that books be sent directly from approved
6 vendors and by the policy of searching all incoming packages." <u>Id.</u> at 924.  The court further
7 determined that "[t]here was no rational basis for the added imposition of the vendor label
8 policy, which unnecessarily burden[ed] [the plaintiff's] First Amendment rights by cutting
9 off his receipt of books." <u>Id.</u>

10   In the instant case, Defendants' stated objective for the policy of requiring the
11 additional marking was to assist mail staff to identify and process materials, and for security
12 and to prevent contraband.  The policy, however, also requires that the books come from
13 publishers or bookstores, and all packages are inspected upon entrance into the prison.
14 Moreover, Jenkins attested that packages from bookstores, with preprinted return address
15 labels, are ordinarily accepted *without* being marked as "Authorized by Bureau Policy."
16 Finally, Plaintiff attested that as a result of this policy, his family and friends no longer send
17 him books.  The instant case is almost identical to <u>Ashker</u>.  As the Ninth Circuit held in
18 <u>Ashker</u>, this additional marking, when it is clear from the return address that the package
19 comes from a well-known bookstore, unnecessarily burdens Plaintiff's First Amendment
20 rights.

21   Defendants argued that Plaintiff had an easy remedy, merely asking the bookstore to
22 re-mail the package with the proper markings.  But Plaintiff persuasively noted that his
23 package was ordered by a non-prisoner, and he was unaware of the order at the time of the
24 shipping and thus could not notify the bookstore (Doc. #34-35).  Defendants also argue that
25 return addresses are easily manufactured, and in order to prevent the introduction of
26 contraband the additional marking is necessary.  Defendants argue that most non-prisoners
27 would be unaware of such a requirement.  Defendants also argue that they did not have the
28 discretion to ignore this BOP policy.  They later argue and present evidence, however, that

1  this policy is not always followed. Defendants note that prison employees may allow the
2  package to proceed without the appropriate marking (Doc. #41). Thus, Defendants' own
3  argument, along with Plaintiff's affidavits from inmates indicating that other facilities do not
4  strictly follow this policy, demonstrates that Defendants *do* have discretion when
5  administering the policy. Finally, Defendants argue that it is not always clear from the return
6  address that the package is from a bookstore or publisher. But that is not the issue in the
7  instant case because the package was obviously from Barnes & Noble, which Defendants
8  admittedly knew was a bookstore. Defendants' arguments as to the necessity of the marking
9  are not persuasive.

10  In sum, under established Ninth Circuit law, Defendants violated Plaintiff's First
11  Amendment rights by approving of and enforcing a policy requiring packages of books
12  obviously coming from bookstores or publishers to be subjected to additional labeling.[1]
13  Defendant Ellis, however, is immune from liability for damages if such right was not clearly
14  established when Plaintiff's rights were violated.

15  **2.    Clearly Established Right.**

16  "A right is clearly established if its 'contours' are 'sufficiently clear that a reasonable
17  official would understand that what he is doing violates that right.'" Kennedy, 439 F.3d at
18  1060-61. Even if the right was clearly established and the official "makes a mistake in
19  applying the relevant legal doctrine, he or she is not precluded from claiming qualified
20  immunity so long as the mistake is reasonable." Id. at 1061.

21  Ashker became law on November 18, 2003. Prior to Ashker, the law provided only
22  that "the prohibition against receipt of . . . books unless mailed directly from publishers, book
23  clubs, or bookstores [did] not violate [an inmate's] First Amendment rights." Bell v.
24  Wolfish, 441 U.S. 520, 550 (1979). Several Bureau of Prisons institutions, including the

---

[1] Because Defendants violated Plaintiff's constitutional rights in connection with the refusal of the package, his claims regarding notification need not be addressed. It should be noted, however, that Plaintiff does not possess a constitutional right to be notified of the refusal of packages to which he is not constitutionally entitled.

- 8 -

1  Federal BOP and the California BOP, had additional labeling requirements. See Ashker, 350
2  F.3d at 917-18. Prior to Ashker, the contours of Plaintiff's First Amendment right to receive
3  books from a bookstore without an additional label requirement, when the return address
4  clearly indicated the books' origin and the package was inspected upon entering the prison,
5  was not sufficiently clear. See Kennedy, 439 F.3d at 1060-61. Thus, Defendant Ellis is
6  entitled to qualified immunity for any violation of Plaintiff's rights prior to November 18,
7  2003. The contours of Plaintiff's right was clear after November 18, 2003, however, and any
8  mistake with respect to the right was not reasonable given the facts and holding in Ashker.
9  Defendant Ellis did not retire until May 2004, during which time the policy continued to be
10 enforced, and it remains enforced today. Accordingly, the continued violation of Plaintiff's
11 right after that date are actionable under Bivens.

12 Plaintiff's motion for summary judgment will be granted in part. Plaintiff's First
13 Amendment rights were violated by the enforcement of the policy requiring the refusal of
14 packages of books not marked as "Authorized by Bureau Policy" when the package was
15 obviously from a bookstore. Defendant Ellis is entitled to qualified immunity as to any
16 damages prior to November 18, 2003. Defendant Ellis is not, however, entitled to qualified
17 immunity for any damages Plaintiff incurred after Ashker was decided, and Defendant
18 Booker is not entitled to qualified immunity in regard to the instant action.

19 The case will proceed as to both injunctive relief and monetary damages. See Ashker,
20 350 F.3d at 924 ("[W]e conclude that the district court properly granted the injunction.
21 Ashker has established irreparable injury by demonstrating his inability to receive books.
22 Enjoining the book label policy heels close to the identified violation and is not overly
23 intrusive because the prison still searches every incoming package and can determine from
24 the address label and invoice whether the package came directly from a vendor.") (citations
25 and alteration omitted). The Court, out of deference to the running of the prison, will allow
26 Defendant Booker to propose the language of the permanent injunction. In doing so,
27 Defendant Booker should be aware that the injunction "shall extend no further than necessary
28 to correct the violation" of Plaintiff's constitutional rights, and shall be "narrowly drawn,

1  extend[ing] no further than necessary, . . . and [be] the least intrusive means necessary
2  to correct the violation." 18 U.S.C. § 3626(a)(1)(A); see Clement, 364 F.3d at 1152.
3  Defendant Booker shall file a proposed permanent injunction consistent with this order by
4  **December 8, 2006**. The Court will promptly review the proposed injunction, make
5  modifications as necessary and in light of Plaintiff's requested injunction, and then enter a
6  final injunction.

**IT IS ORDERED:**

1. Plaintiff's motions to strike (Docs. ##35, 40) are **denied**.
2. Plaintiff's motion for leave to file sur-reply (Doc. #40) is **granted**.
3. The parties' motions for summary judgment (Docs. ##27, 31) are **granted in part** and **denied in part** as set forth in this order.
4. Defendant Booker shall file a proposed permanent injunction consistent with this order by **December 3, 2006**.
5. The Court will set a final pretrial conference by separate order.

DATED this 15th day of November, 2006.

_____
David G. Campbell
United States District Judge

- 10 -